UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HIGH EXPECTATIONS LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| KPCA NORTHWESTERN | * | |
| PRESBYTERIAN THEOLOGICAL | * | Civil Action No. 1:24-cv-11225-IT |
| SEMINARY; YOHAN KANG, Individually, | * | |
| and as an Officer and Dean of Academic | * | |
| Affairs; JONG TAEK CHUNG, Individually | * | |
| and as Designated School Official, and | * | |
| GOAHEAD VISA LLC, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

September 3, 2025

TALWANI, D.J.

Defendant KPCA Northwestern Presbyterian Theological Seminary ("KPCA"), and its

officers, Defendants Jong Taek Chung, sued individually and as Designated School Official, and

Yohan Kang, sued individually and as an Officer and Dean of Academic Affairs (collectively,

the "KPCA Defendants"), seek to dismiss Plaintiff High Expectations LLC's ("High

Expectations") Second Amended Complaint [Doc. No. 49] for lack of personal jurisdiction,

improper venue, and failure to state a claim. See Mots. to Dismiss [Doc. Nos. 53, 61, 64]. For the

reasons set forth below, Chung and Kang's Motions to Dismiss [Doc. Nos. 61, 64] are

GRANTED for lack of personal jurisdiction, and KPCA's Motion to Dismiss [Doc. No. 53] is

DENIED as to the lack of personal jurisdiction argument and otherwise remains under

advisement.

## I.    Procedural Background

Plaintiff initiated this action against KPCA only. See Compl. [Doc. No. 1]. After KPCA filed its first Motion to Dismiss [Doc. No. 10], Plaintiff filed a First Amended Complaint [Doc. No. 14], naming KPCA, Kang, GoAhead Visa LLC ("GoAhead Visa"), and two others. After KPCA filed its second Motion to Dismiss [Doc. No. 23] and the parties engaged in further motion practice, Plaintiff filed the pending Second Amended Complaint [Doc. No. 49].

The Second Amended Complaint [Doc. No. 49] again named Defendants KPCA, Kang, and GoAhead Visa, but dropped the other individual defendants and added Defendant Chung.[1] Plaintiff asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332; personal jurisdiction under the Massachusetts long-arm statute, M.G.L. c. 223A, § 3, and the due process clause of the United States Constitution; and venue pursuant to 28 U.S.C. § 1391(b). Second Am. Compl. ¶¶ 8, 10–12 [Doc. No. 49].

The Second Amended Complaint [Doc. No. 49] alleges that KPCA operates a "'pay to stay' scam for financial gain." Id. ¶ 38. Plaintiff contends that KPCA "entices unqualified [foreign] students to transfer to KPCA, by permitting students to reside anywhere in the U.S. and to avoid the rigorous academic and attendance requirements required by [the Department of Homeland Security ("DHS")] and accredited educational institutions." Id. Plaintiff alleges as to all Defendants a violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 11, tortious interference with advantageous business relationships, and civil conspiracy. Id. ¶¶ 53–68.

---

[1] It also named two other Defendants—Ilkyu Park and Young Jil Kin—but Plaintiff subsequently dismissed the claims against these Defendants without prejudice. See Notice of Voluntary Dismissal [Doc. No. 102].

The KPCA Defendants responded with the pending <u>Motions to Dismiss</u> [Doc. Nos. 53, 61, 64].[2]

## II.    Standard of Review

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1387 (1st Cir. 1995) (internal quotation marks and citation omitted). The exercise of personal jurisdiction over a defendant must both be authorized by statute and consistent with the due process requirements of the United States Constitution. <u>Barrett v. Lombardi</u>, 239 F.3d 23, 26 (1st Cir. 2001). The plaintiff bears the burden of establishing that personal jurisdiction exists. <u>See</u> <u>Cossart v. United Excel Corp.</u>, 804 F.3d 13, 18 (1st Cir. 2015). Where the court considers a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the court applies the "prima facie standard." <u>Sawtelle</u>, 70 F.3d at 1386 n.1. To make a prima facie showing of jurisdiction, a plaintiff cannot rest on the pleadings but must "proffer[] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." <u>Boit v. Gar-Tec Products, Inc.</u>, 967 F.2d 671, 675 (1st Cir. 1992). Courts must also consider a defendant's undisputed jurisdictional facts. <u>Chen v. United States Sports Acad., Inc.</u>, 956 F.3d 45, 56 (1st Cir. 2020). Generally, courts considering jurisdictional claims are not required to "credit conclusory allegations or draw farfetched inferences." <u>Lin v. TipRanks, Ltd.</u>, 19 F.4th 28, 33 (1st Cir. 2021) (quoting <u>Ticketmaster-N.Y., Inc. v. Alioto</u>, 26 F.3d 201, 203 (1st Cir. 1994)). However, "the

---

[2] The remaining Defendant, GoAhead Visa LLC is not represented by counsel, <u>see</u> Elec. Order [Doc. No. 105] (striking GoAhead Visa LLC's Answer and Counterclaim as improperly filed without counsel), and the time for counsel to appear and for GoAhead Visa LLC to respond has lapsed, <u>see</u> Elec. Order [Doc. No. 109].

district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." <u>United Elec. Radio and Mach. Workers of America (UE) v. 163 Pleasant St. Corp.</u>, 987 F.2d 39, 44 (1st Cir. 1993).

### III.    Background

KPCA's principal place of business is Shoreline, Washington. Aff. of Yohan Kang ("Kang Aff.") ¶ 2 [Doc. No. 54-1]. It is "organized as a nonprofit corporation under the laws of Washington" and "has never had a place of business in any State other than Washington." <u>Id.</u> ¶¶ 2, 5.  It "maintains a single bank account in a Washington branch of a national bank[,]" "has no employees residing outside the State of Washington[,]" and "has no physical presence in Massachusetts (whether by office, agent, or phone number), owns no property in Massachusetts, rents no property in Massachusetts, pays no taxes in Massachusetts, and does not participate in career or education fairs in Massachusetts." <u>Id.</u> ¶¶ 8–10.

KPCA provides fully online and hybrid courses for its B.A. and M.A. programs; the hybrid classes have an in-person attendance requirement in Washington. Aff. of Jong Taek Chung ("Chung Aff.") ¶ 7 [Doc. No. 54-2]. The online and hybrid classes utilize web-based platforms, the materials for which "are uploaded and posted from Washington." Kang Aff. ¶¶ 11–12 [Doc. No. 54-1]; Chung Aff. ¶¶ 9–10 [Doc. No. 54-2]. The sticker price for KPCA's annual tuition is $4,800 per year. Chung Aff. ¶ 8 [Doc. No. 54-2]. The application form to enroll at KPCA is "available via email upon request, and is publicly available on the KPCA website." <u>Id.</u> ¶ 23.

KPCA has 1,048 enrolled students, who "have addresses in twenty-three states, as well as other countries[,]" and "129 current students reside in Massachusetts." <u>Id.</u> ¶¶ 17–18. "KPCA generally relies upon student referrals and word-of-mouth, and does not advertise itself." <u>Id.</u> ¶ 19. KPCA contracts with two paid referral sources, which are located in Florida and Arizona.

Id. The Arizona referral source referred 29 "High Expectations LLC transfer students," and KPCA "does not influence or direct" that source's recruitment methods or communications, nor is it privy or party to those communications. Id. ¶¶ 20–21.

KPCA also partners with GoAhead Visa, which maintains a website advertising "a partnership between School [KPCA] and GoAhead Visa" and providing application materials available from goaheadusa.com with registration payments to be made on Zelle to "Goahead Visa F1 LLC" at kpcauniversity@gmail.com. Ex. 1 to First. Am. Compl. at ECF pp. 3, 5 [Doc. No. 14-1]. Another GoAhead Visa website identifies the partnership as "the GO AHEAD – KPCA Northwestern Presbyterian Theological Seminary" and includes a registration page from which students can download an application form. Id., Ex. 1A at ECF pp. 10–11. Massachusetts is not mentioned in the websites.

Hundreds of students in Massachusetts have transferred to KPCA from High Expectations and other Massachusetts-based schools. See Leonard Aff. ¶ 2 [Doc. No. 84-1] (101 transfers to KPCA from High Expectations); Fernandes Aff. ¶ 3 [Doc. No. 84-2] (112 transfers to KPCA from Approach International Student Center, Inc., located in Massachusetts); Lowder Aff. ¶ 2 [Doc. No. 84-3] (152 transfers to KPCA transfers from Computer Systems Institute, located in Massachusetts and Illinois); Nelson Aff. ¶ 3 [Doc. No. 84-4] (45 KPCA transfers from ASC English, located in Massachusetts); Loo Aff. ¶ 2 [Doc. No. 84-5] (35 KPCA transfers from Boston International Academy, located in Massachusetts).

Individual Defendant Kang is an Officer of KPCA and is employed as the Dean of Academic Affairs. Kang Aff. ¶¶ 1, 4 [Doc. No. 54-1]. He resides in Washington. Second Am. Compl. ¶ 3 [Doc. No. 49]; Kang Mem. ISO Mot. to Dismiss ("Kang Mem.") 1 [Doc. No. 65]. Kang's duties include administration and corporate governance; he is in charge of KPCA's

finances and involved in the day-to-day administration of the school, including operating its online platforms. Kang Aff. ¶ 7 [Doc. No. 54-1].

Individual Defendant Chung is "the Office Administrator and Designated School Official" at KPCA. Chung Aff. ¶ 1 [Doc. No. 54-2]. He is a resident of Washington. Second Am. Compl. ¶ 6 [Doc. No. 49]; Chung Mem. ISO Mot. to Dismiss ("Chung Mem.") 1 [Doc. No. 62]. Chung reviews student applications for KPCA with a colleague, and Chung makes the ultimate admission decisions. Chung Aff. ¶ 24 [Doc. No. 54-2]. He informs students of their acceptance and provides them with a transfer form; he does this from Washington. Id. ¶¶ 25–26. In his role as Designated School Official, he is responsible for issuing I-20 Certificates of Eligibility to international students and for monitoring school and student compliance with immigration regulations. See generally U.S. Immigration and Customs Enforcement, SEVIS Reporting Requirements for Designated School Officials, https://www.ice.gov/sevis/dso-requirements (last accessed August 26, 2025).

## IV.    Discussion

### A.    Massachusetts Long-Arm Statute

"The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016) (citation omitted). Even where a party presents "jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites" of the long-arm statute. Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6, 389 N.E.2d 76 (1979). "Because the long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coexistensive with the parameters of due process, and in order to avoid

unnecessary consideration of constitutional questions, a determination under the long-arm statute

is to precede consideration of the constitutional question." <u>SCVNGR, Inc. v. Punchh, Inc.</u>, 478

Mass. 324, 325, 85 N.E. 3d 50 (2017); <u>see also</u> <u>A Corp. v. All Am. Plumbing, Inc.</u>, 812 F.3d 54,

59 (1st Cir. 2016) (noting recent caselaw suggesting "that the Commonwealth's long-arm statute

may impose limits on the exercise of personal jurisdiction 'more restrictive' than those required

by the Constitution").

> The Massachusetts long-arm statute provides in relevant part:
>
> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
>> (a) transacting any business in this commonwealth;
>>
>> (b) contracting to supply services or things in this commonwealth;
>>
>> (c) causing tortious injury by an act or omission in this commonwealth; [or]
>>
>> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . .

M.G.L. c. 223A, § 3 (paragraphs (e)–(h) omitted). Under any prong of the statute, the phrase "a

cause of action . . . arising from" requires but-for causation. <u>Cossart</u>, 804 F.3d at 18 (citing <u>Tatro</u>

<u>v. Manor Care, Inc.</u>, 416 Mass. 763, 770, 625 N.E.2d 549 (1994)).

### 1.    Chung

High Expectations argues that section 3(b) of the long-arm statute applies to Chung,

based on his ongoing involvement in KPCA's enrollment contract agreements and his

monitoring of student compliance with those agreements as an officer of KPCA; and that section

3(c) applies because Chung sent I-20 Certificates of Eligibility to Massachusetts students "falsely

claiming . . . that [KPCA] has determined that the . . . student will be required to pursue a full

program of study, as defined by 8 CFR 214.2(f)(6)." Pl.'s Opp. to Chung Mot. to Dismiss 10

[Doc. No. 84] (internal quotation marks omitted) (citing <u>Murphy v. Erwin–Wasey, Inc.</u>, 460 F.2d

661, 664 (1st Cir. 1972) for the proposition that personal jurisdiction is proper when "a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state").

Chung is not alleged to have been a contracting party for purposes of section 3(b), and so section 3(b) does not confer personal jurisdiction over him on the basis of KPCA's contracts with students.

And to the extent Chung's mailings constitute in-forum conduct, on the record before the court, Chung "did not act in the forum to serve his personal interests, but rather acted solely as an agent of [KPCA]" and thus that conduct is insufficient to independently establish personal jurisdiction over him where he "is alleged neither to have derived any personal benefit from his contacts in the Commonwealth nor to have acted beyond the scope of his employment." LaVallee v. Parrot-Ice Drink Prods. of Am., Inc., 193 F. Supp. 2d 296, 302 (D. Mass. 2002).

The court finds the Massachusetts long-arm statute does not confer personal jurisdiction over Chung. Accordingly, Chung's Motion to Dismiss [Doc. No. 61] is GRANTED for lack of personal jurisdiction.

### 2.    Kang

As to Kang, High Expectations argues that section 3(a) applies based on his "administration of KPCA's interactive online learning platform in Massachusetts" and his processing of 101 student transfers to KPCA by authorizing the issuance of I-20 Certificates of Eligibility, all of which allegedly translates to a revenue of $484,800 in "Kang's regular course of business in Massachusetts from [High Expectations] alone[.]" Pl.'s Opp. to Kang Mot. to Dismiss 8–9 [Doc. No. 77].

Even assuming there was a regular course of business in Massachusetts, High Expectations errs by misattributing it to Kang individually and not KPCA. For the same reasons

as with Chung, the Massachusetts long-arm statute does not confer personal jurisdiction over Kang in the absence of conduct relating to a personal benefit or beyond the scope of his employment. See Katz v. Liberty Power Corp., LLC, 693 F. Supp. 3d 154, 161 (D. Mass. 2023) (finding section 3(a) inapplicable based on corporate officer's official acts in the absence of something "more than mere participation in the corporation's affairs").

Accordingly, Kang's Motion to Dismiss [Doc. No. 64] is GRANTED for lack of personal jurisdiction.

### 3.    KPCA

KPCA argues that section 3(a) does not apply to it because KPCA "did not undertake any purposeful actions . . . it did not send faculty into Massachusetts to recruit, it did not advertise in Massachusetts newspapers, and it did not, for example, engage in efforts to serve the Massachusetts educational market through educational or career fairs." KPCA Mem. ISO Mot. to Dismiss ("KPCA Mem.") 9–10 [Doc. No. 54] (citing Hahn v. Vermont L. Sch., 698 F.2d 48, 52 (1st Cir. 1983)). KPCA also argues that section 3(b) does not apply because "KPCA did not contract to supply services in or to Massachusetts[.]" Id. at 10.[3] These arguments do not hold sway.

High Expectations' response is focused on the interactive websites of KPCA and

---

[3] The court does not address section 3(c), where High Expectations merely recites it but fails to elaborate why it applies. See Pl.'s Opp. to KPCA Mot. to Dismiss 14 [Doc. No. 68]. The argument is waived. See U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); Cossart, 804 F.3d at 18 (burden of establishing personal jurisdiction lies with the plaintiff). And the court rejects High Expectations' argument that section 3(d) applies because that section is predicated on general jurisdiction, Pettengill v. Curtis, 584 F. Supp. 2d 348, 357 (D. Mass. 2008) (citing Conn. Nat'l Bank v. Hoover Treated Wood Prods., 37 Mass. App. Ct. 231, 233 n.6 (1994)), and KPCA's place of incorporation and principal place of business are the State of Washington, see Kang Aff. ¶¶ 2, 5 [Doc. No. 54-1].

GoAhead Visa, through which prospective students can submit applications to enroll in KPCA, and on advertisement efforts that reached at least one resident in Massachusetts. Pl.'s Opp. to KPCA Mot. to Dismiss ("Opp.") 11–13 [Doc. No. 68]. Where "[t]he record . . . fails to establish that [KPCA] carries out any advertising or marketing efforts that 'specifically target Massachusetts residents,' as opposed to residents of other states[,]" that is insufficient for the long-arm statute's requirements. Power v. Connectweb Techs., Inc., 648 F. Supp. 3d 321, 332 (D. Mass. 2023).

However, KPCA's online presence is more than the occasional advertisement or an informational website about its school in Washington. Its principal online activity—which gives rise to the injuries alleged in the complaint—is offering and providing courses online. KPCA admits that at least 129 of its current students reside in Massachusetts, Chung Aff. ¶ 18 [Doc. No. 54-2], supporting the inference that those students are taking KPCA's courses online while in Massachusetts.

As noted above, High Expectations has also alleged that the sticker price for KPCA's annual tuition is $4,800 per year. Second Am. Compl. ¶ 46 [Doc. No. 49]; see Chung Aff. ¶ 8 [Doc. No. 54-2]. Although KPCA disputes that this figure reflects the true amount of revenue received after discounts or scholarships, KPCA does not dispute that this is the sticker price for tuition and does not suggest that it receives no revenue from students in Massachusetts. See KPCA Reply 3 [Doc. No. 80].

The court finds that KPCA's conduct amounts to transacting business and contracting to supply services in Massachusetts sufficient to satisfy sections 3(a) and 3(b) of the long-arm

statute.[4]

## B.    Constitutional Due Process

Having found that the Massachusetts long-arm statute is satisfied as to KPCA, the court

now considers whether personal jurisdiction comports with the Due Process Clause, which

requires that KPCA have "minimum contacts" with the forum state "such that the maintenance of

the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v.

Washington, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). "A

district court may exercise authority over a defendant by virtue of either general or specific

jurisdiction." Mass. Sch. of Law v. ABA, 142 F.3d 26, 34 (1st Cir. 1998).

Where High Expectations does not argue that general jurisdiction applies, the court only

considers specific jurisdiction. An exercise of specific jurisdiction requires the following: 1) the

plaintiff's claim must directly arise from or relate to the defendant's activities in the forum,

2) the defendant's forum-state contacts must represent a purposeful availment of the privilege of

conducting activities in that state, and 3) the exercise of specific jurisdiction in the forum must

be reasonable under the circumstances. Chen, 956 F.3d at 59. All three conditions must be

satisfied together: "[f]ailure to make any one of these showings dooms any effort to establish

specific personal jurisdiction." Id.

### 1.    Relatedness

Relatedness requires that High Expectations' claims directly arise from or relate to

KPCA's activities in the forum state, Chen, 956 F.3d at 59, with a demonstrable nexus between

its claims and KPCA's forum-based activities, Adelson v. Hananel, 652 F.3d 75, 78 (1st Cir.

---

[4] The court need not reach High Expectations' arguments as to section 3(c) or 3(d).

2011). "In-forum effects of extra-forum activities" do not generally "suffice to constitute

minimum contacts." Lewis v. Hill, 683 F. Supp. 3d 137, 156 (D. Mass. 2023).

Here, the claims arise out of KPCA's alleged efforts to lure students to its substandard

online education platform that allegedly violates regulatory requirements, thus giving rise to

High Expectations' claims of unfair competition and tortious interference with its business

relations. See Opp. 13, 15 [Doc. No. 68]. The court finds a sufficient nexus between High

Expectations' claims and KPCA's conduct hosting online classes for Massachusetts residents.

### 2.    Purposeful Availment

When an out-of-forum defendant has not "manifestly . . . availed himself of the privilege

of conducting business there," it would be "unreasonable" for the defendant to bear the burden of

litigation in that forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). The

question is "whether a defendant has followed a course of conduct directed at the society or

economy existing within the jurisdiction of a given sovereign, so that the sovereign has the

power to subject the defendant to judgment concerning that conduct." J. McIntyre Mach., Ltd. v.

Nicastro, 564 U.S. 873, 884 (2011). The purposeful availment requirement thus represents a

"rough quid pro quo" when a defendant "deliberately targets its behavior" toward a particular

forum. PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 19 (1st Cir. 2019). The two

cornerstones of purposeful availment are voluntariness and foreseeability. Chen, 956 F.3d at 51.

Voluntariness demands that the defendant's contacts with the forum "result proximately from its

own actions." Id. Foreseeability requires conduct and a connection with the forum state such that

the defendant should "reasonably anticipate being haled into court there." Chen, 956 F.3d at 51.

In Chen, the First Circuit found no proper exercise of personal jurisdiction over an

Alabama-based sports academy, USSA, even though it was "involved mainly in online

education, . . . it [was] accredited to award bachelor's, master's, and doctoral degrees[,] [and]

USSA's Distance Learning Program allow[ed] students to complete their coursework 'without leaving their homes or jobs' through an online learning platform accessible twenty-four hours a day in all fifty states." 956 F.3d at 52. The First Circuit found that this "maintenance of an interactive online learning platform in Massachusetts — on which [the plaintiff] allegedly completed coursework and attempted to resume work on his portfolio — presents a closer question" than that of a merely informational website. Id. at 60. The plaintiff was enrolled in a doctoral program through USSA, and between 2008 and 2010, completed a significant portion of his coursework while residing in Alabama, with the exception of one term in Missouri and time spent in an experiential program in New York. Id. at 52. Then, "[a]t some point in or after 2010, [the plaintiff] moved to Massachusetts and took a hiatus from his doctoral program" to pursue another degree unrelated to USSA's program. Id. at 52–53. In 2016, "while apparently still living in Massachusetts[,]" he attempted to resume his coursework with USSA only to discover he had been removed from enrollment. Id. at 53. The First Circuit held that specific jurisdiction could not lie on these facts because the plaintiff's claims (related to his removal from enrollment) arose solely out of his own contacts with USSA, and he failed to show that USSA deliberately used its online presence to target him in Massachusetts or knowingly received "significant tuition dollars from [him] while he was billeted in Massachusetts." Id. at 61. The fact that two other "Massachusetts-based students were enrolled in a single online course through USSA . . . might . . . prove relevant to a holistic assessment" of purposeful availment, but there was similarly no evidence as to those students of USSA targeting or deriving substantial revenue from them. Id.

The record here is more substantial than in Chen. KPCA admits that over 100 of its students are in Massachusetts, Chung Aff. ¶ 18 [Doc. No. 54-2], and does not dispute that potentially hundreds more of its students are in Massachusetts, see Affs. [Doc. Nos. 84-1, 84-2,

84-3, 84-4, 84-5]. Its conduct in enrolling those students is central to High Expectations' claims of unfair competition and tortious interference. And although KPCA disputes the actual calculation of revenue it receives, see KPCA Reply 3 [Doc. No. 80], even heavily discounted tuition across hundreds of students would amount to a substantial revenue source indicating a regular course of business with Massachusetts residents. Furthermore, High Expectations alleges that KPCA principally operated in English and Korean until it began "intentionally targeting Brazilian students" with the creation of a Portuguese-language program in 2024, see Second Am. Compl. ¶¶ 35–36 [Doc. No. 49], and the timing of this change in conjunction with the high volume of transfers of Massachusetts-based students to KPCA throughout 2024, see Affs.[Doc. Nos. 84-1, 84-2, 84-3, 84-4, 84-5], supports an inference that KPCA targeted Massachusetts residents.[5]

KPCA argues that all this activity is not from its own voluntary actions but merely the fortuitous result of unilateral efforts taken by the non-party students. KPCA Mem. 12–13 [Doc. No. 54]. It also argues that the conduct of which High Expectations complains—luring away High Expectations' students—precedes KPCA's receipt of tuition or opportunity to learn where the students are located. Id. Viewed through "a holistic assessment of whether [KPCA] has purposefully availed itself of the privilege of doing business in Massachusetts," Chen, 956 F.3d at 61, these arguments are implausible. Notably, KPCA offers no authority other than Chen to suggest that such a volume of commercial activity with the residents of a forum state is

---

[5] The court does not find purposeful availment is satisfied solely based on revenue generated from Massachusetts residents, as High Expectations suggests it should, citing Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 9 (1st Cir. 2018). Plixer is "simply inapposite . . . [i]nasmuch as the crux of that analysis . . . require[d] a showing that a defendant is not subject to the personal jurisdiction of any state court of general jurisdiction for purposes of Rule 4(k)(2)." Rosenthal v. Bloomingdales.com, LLC, 101 F.4th 90, 96 (1st Cir. 2024).

insufficient. As discussed above, the facts here are distinguishable from <u>Chen</u>, where USSA's alleged contacts were with a total of only three individuals in Massachusetts, and USSA had no reason to believe the plaintiff was in Massachusetts due to his unilateral move there while taking a years-long hiatus from his course of study with USSA. Here, KPCA's enrollment of hundreds of students from Massachusetts makes its claims of ignorance implausible.

Therefore, the court finds that KPCA purposefully availed itself of the privilege of conducting business in Massachusetts so as to reasonably anticipate being haled into court here.

### 3.    Reasonableness

Finally, the court must assess the reasonableness of exercising personal jurisdiction over an out-of-state defendant based on five factors: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. <u>Foster-Miller, Inc. v. Babcock & Wilcox Can.</u>, 46 F.3d 138, 150 (1st Cir. 1995).

KPCA does not address the reasonableness factors in either its moving brief or reply. In any event, the court finds the exercise of personal jurisdiction here reasonable: nothing in the record indicates a "special or unusual burden" for KPCA as a corporate entity to appear in this forum, <u>Adelson</u>, 652 F.3d at 83; Massachusetts "has a manifest interest in providing a convenient forum to residents asserting good faith and objectively reasonable claims for relief," <u>C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.</u>, 771 F.3d 59, 70 (1st Cir. 2014); High Expectations' choice of forum is entitled to deference, <u>Foster-Miller, Inc.</u>, 46 F.3d at 151; and nothing suggests that personal jurisdiction here would offend the interests of the judicial system or the common interests of all sovereigns.

Accordingly, the court finds that exercising personal jurisdiction over KPCA conforms with the due process requirements of the Constitution, and KPCA's motion to dismiss on that basis is DENIED.

## V.    Conclusion

For the foregoing reasons, Chung's Motion to Dismiss [Doc. No. 61] and Kang's Motion to Dismiss [Doc. No. 64] are GRANTED for lack of personal jurisdiction. KPCA's Motion to Dismiss [Doc. No. 53] is DENIED as to personal jurisdiction and otherwise remains under advisement.

IT IS SO ORDERED.

September 3, 2025                    /s/ Indira Talwani
                                    United States District Judge