UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HIGH EXPECTATIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>KPCA NORTHWESTERN PRESBYTERIAN THEOLOGICAL SEMINARY; YOHAN KANG, Individually, and as an Officer and Dean of Academic Affairs; JONG TAEK CHUNG, Individually and as Designated School Official, and GOAHEAD VISA LLC,<br><br>Defendants. | Civil Action No. 1:24-cv-11225-IT |

MEMORANDUM & ORDER

September 4, 2025

TALWANI, D.J.

Plaintiff High Expectations LLC ("High Expectations") brought this action in diversity against Defendant KPCA Northwestern Presbyterian Theological Seminary ("KPCA").[1] KPCA moved to dismiss the Second Amended Complaint [Doc. No. 49] based on lack of personal jurisdiction, improper venue, and failure to state a claim. See Mot. to Dismiss [Doc. No. 53]. In a prior order, the court denied the Motion as to lack of personal jurisdiction and took the Motion under advisement as to improper venue and failure to state a claim. See Mem. & Order 1, 16 [Doc. No. 111]. For the reasons explained below, the Motion is GRANTED both as to improper venue and for failure to state a claim.

---

[1] The court's prior order details the case's procedural history, including subsequently added and dropped defendants. See Mem. & Order 2 [Doc. No. 111].

I.    **Facts as Alleged in the Second Amended Complaint**

KPCA is a non-profit theological seminary based in Washington, "offering a bachelor's degree program in biblical studies and a master's degree program in divinity." Second Am. Compl. ¶¶ 2, 20 [Doc. No. 49]. "As a denominational seminary of the Korean Presbyterian Church in Abroad, KPCA Northwestern Presbyterian Theological Seminary's primary purpose is to nurture leaders for the church and society through training in piety and devotion, academic research and study, and praxis of the Gospel." Ex. 4 to First Am. Compl. at 3 (catalog) [Doc. No. 14-4]; see Second Am. Compl. ¶ 20 [Doc. No 49] (citing catalog).

High Expectations, an English Language School based in Massachusetts, contends that KPCA operates a "'pay to stay' scam for financial gain" and "engaged in unfair or deceptive acts[,] practices[,] and unfair methods of competition" by inducing F-1 visa students in Massachusetts, who are required to take a full course of study and to pass a standardized English language proficiency test, to transfer to KPCA by offering a distance learning program that fails to comply with the academic and attendance standards required by the Department of Homeland Security. Second Am. Compl. ¶¶ 25–26, 33–34, 38, 49, 54 [Doc. No. 49].

KPCA's classes and course materials were allegedly in English and Korean until 2024, when KPCA "began to offer its distance courses in Portuguese, intentionally targeting Brazilian students with the promise of spending more time at home with family while maintaining their F1 visa status." Id. ¶¶ 35–36. High Expectations alleges that "91 students primarily of Portuguese [descent] transferred from High Expectations to KPCA prior to completion of their intended program of study[,]" representing one-third of High Expectations' total enrollment, and that none of those 91 students relocated from Massachusetts to Washington. Id. ¶¶ 2, 39 & n.8. "KPCA requires Plaintiff to fill out and sign a KPCA transfer form for each student; therefore, KPCA is aware that transfer students have a business relationship with the Plaintiff." Id. ¶ 45.

2

KPCA and its officers allegedly committed tax and visa fraud in the process of inducing those enrollments. Id. ¶¶ 49–50. The Second Amended Complaint incorporates by reference KPCA's 2022 tax filings, which indicate expenses of $135,307 and program service revenue of $95,425. See id. ¶ 50; Ex. 6 to First Am. Compl. at 1 [Doc. No. 14-6]. However, High Expectations alleges that this revenue figure is fraudulent because KPCA had 1,048 students enrolled in the United States as of June 2023 and an annual tuition of $4,800 per year, which would amount to a gross annual tuition revenue of more than $5 million. Second Am. Compl. ¶¶ 46, 50 [Doc. No. 49]. Additionally, High Expectations alleges that KPCA's Designated School Official "intentionally misrepresented student English language proficiency on I-20 forms," which are required for a student to obtain a nonimmigrant F-1 visa. Id. ¶¶ 17, 49.

High Expectations' causes of action arise under the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 11 (Count I), and state common law: tortious interference with advantageous business relations (Count II) and civil conspiracy (Count III). See id. ¶¶ 53–68.

## II.    Rule 12(b)(3): Venue

### A.    Standard of Review

Venue refers to the place where a lawsuit should be brought and is appropriate in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). If the case does not fall into one of these categories, venue is improper and "the case must be dismissed or transferred under § 1406(a)." Atl. Marine Const. Co. v. U.S. Dist.

Ct. for W. Dist. of Texas, 571 U.S 49, 56 (2013). In general, "the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place for trial." Leroy v. Great Western United Corp., 443 U.S. 173, 183–84 (1979) (emphasis in original).

In determining venue, the court looks "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim." Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001). This is a "holistic view of the acts underlying a claim." Id. at 43 n.6.

B. Discussion

The Second Amended Complaint alleges that Defendants are residents of states other than Massachusetts, but that venue is proper here pursuant to 28 U.S.C. § 1391(b)(2) "as the events giving rise to these claims occurred in Massachusetts." Second Am. Compl. ¶ 11 [Doc. No. 49]; see also id. ¶¶ 2–7. KPCA argues that venue is improper under this subsection because the events giving rise to High Expectations' claims are KPCA's alleged actions in enticing or inducing the transfer of High Expectations' students, and those actions all took place in Washington. KPCA Mem. ISO Mot. to Dismiss 14–15 [Doc. No. 54]. High Expectations fails to address venue in its opposition.

The court takes a "holistic view of the acts underlying a claim" rather than looking at "a single triggering event." Uffner, 244 F.3d at 42. The court found in its prior order that KPCA's "principal online activity—which gives rise to the injuries alleged in the complaint—is offering and providing courses online" and KPCA's "admi[ssion] that at least 129 of its current students reside in Massachusetts . . . support[s] the inference that those students are taking KPCA's courses online while in Massachusetts." Mem. & Order 10 [Doc. No.111] (citation omitted). But although providing courses online to a significant number of students based in Massachusetts

4

was sufficient for personal jurisdiction over KPCA, that finding does not mean that "a substantial part of the events or omissions giving rise to the claim occurred" here. 28 U.S.C. § 1391(b)(2). Under a holistic view of High Expectations' claims, the court finds that a substantial part of the alleged wrongful events did not take place here. Instead, these alleged events took place in Washington state, from where KPCA allegedly took wrongful actions to attract students to transfer. See Second Am. Compl. ¶ 33 [Doc. No. 49] (KPCA "knowingly and unlawfully issued Forms I-20 . . . and failed to ensure that student qualifications met legitimate standards for admission"); id. ¶ 34 ("KPCA does not legitimately evaluate or require proof of English language proficiency prior to accepting international students into its degree programs"); id. ¶ 38 (KPCA "entices unqualified students to transfer to KPCA, by permitting students to reside anywhere in the U.S.[,] and to avoid the . . . requirements required by SEVP regulations . . ."); id. ¶ 49 (KPCA "knowingly and unlawfully induced and continue to induce F1 visa students to transfer to KPCA in clear violation of DHS regulations"). High Expectation does not contend otherwise. Accordingly, venue in the District of Massachusetts is improper.

Under 28 U.S.C. § 1406(a), when a case is filed in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case" to a district in which it could have been brought. Because the action fails to state a claim, as set forth below, the court declines to transfer the action and instead will dismiss it.

### III.     Rule 12(b)(6): Failure to State a Claim

#### A.     Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### B.  Discussion

KPCA seeks dismissal of High Expectations' Second Amended Complaint [Doc. No. 49] for failure to state a claim. The court addresses each claim in turn.

#### 1.  M.G.L. c. 93A, § 11

High Expectations' claim under the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 11 ("Chapter 93A") alleges that KPCA "willfully and knowingly engaged in unfair or deceptive acts[,] practices[,] and unfair methods of competition by fraudulently inducing F1 visa students to transfer to KPCA in violation of federally mandated admission, academic and attendance requirements." Second Am. Compl. ¶ 54 [Doc. No. 49]. KPCA argues this fails to state a claim because KPCA, a non-profit educational institution, does not engage in trade or commerce, did not engage in unfair or deceptive acts, and the alleged conduct has no geographical nexus to Massachusetts.

Chapter 93A applies only to "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" M.G.L. c. 93A, §§ 2(a), 11. The Massachusetts Supreme Judicial Court has concluded that "where the Legislature employed the terms 'persons engaged in the conduct of any trade or commerce,' it intended to refer specifically to individuals acting in a business context[.]" Begelfer v. Najarian, 381 Mass. 177, 190, 409 N.E.2d 167 (1980) (quoting Lantner v. Carson, 374 Mass. 606, 611, 373 N.E.2d 973 (1978)).

6

Factors to be employed in determining when parties act in a "business context" include: "the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties[,]" as well as "whether the transaction is motivated by business or personal reasons[.]" Id. at 190–191.

"Massachusetts courts have held that universities and other charitable institutions do not engage in 'trade or commerce' (and, thus, are not subject to Chapter 93A) when they engage in activities in furtherance of their core mission, as opposed to activities undertaken in a business context." Brodsky v. New England Sch. of L., 617 F. Supp. 2d 1, 7 (D. Mass. 2009) (citations omitted). Nonprofit status is not in itself dispositive, but "activities that are purely incidental to a university's educational mission are not undertaken in a business context and not subject to Chapter 93A." Id. (citations omitted).

High Expectations argues that KPCA is "engaged in a profit-oriented visa fraud scheme" and generating revenue so as to be considered engaging in trade or commerce. Pl.'s Opp. 21 [Doc. No. 68]. High Expectations cites the Massachusetts Supreme Judicial Court's opinion in Linkage Corp. v. Trs. of Bos. Univ., which found a university to be engaging in trade or commerce for purposes of Chapter 93A. 425 Mass. 1, 25, 679 N.E.2d 191 (1997). The conduct there involved an outside company's contractual agreement "to manage and market educational programs and services" at one of the university's satellite facilities, where the outside company's "performance was to be measured by revenue produced, and [the third party] was to receive bonuses for achieving revenue goals." Id. at 5. The SJC explained: "when, as is the case here, an institution's business motivations, in combination with the nature of the transaction and the activities of the parties, establish a 'business context' . . . [Chapter] 93A will apply because the institution has inserted itself into the marketplace[.]" Id. at 26–27.

7

Such circumstances are not present here. The underlying conduct at issue is the enticement and enrollment of international students to KPCA's degree programs in biblical studies and divinity. Such enrollments are core to its "primary purpose . . . to nurture leaders for the church and society through training in piety and devotion, academic research and study, and praxis of the Gospel." Ex. 4 to First Am. Compl. at 3 [Doc. No. 14-4]. Even assuming as true that KPCA's volume of enrollment is the result of lowered academic standards in violation of federal law, the "[s]etting" of "academic standards . . . is part of any university's core mission" and insufficient to constitute trade or commerce for purposes of Chapter 93A. Brodsky, 617 F. Supp. 2d at 7; see also Fine Mortuary Coll., LLC v. Am. Bd. of Funeral Serv. Educ., Inc., 473 F. Supp. 2d 153, 162 (D. Mass. 2006) (finding allegation that would be otherwise "sufficient to state a claim that the re-accreditation process may have been tainted by bias" insufficient to establish that educational nonprofit was engaged in trade or commerce).

Moreover, in Linkage what was determinative was not that the university was "engaged in a venture in which 'revenues exceeded expenses'" or because "a transaction generate[d] revenue for the nonprofit," Pl.'s Opp. 21 [Doc. No. 68], but that the university "entered and maintained its contractual relationship with Linkage ... to engage in trade and commerce by having [the university] expand its reach ... to the corporate market [which] provided a ... lucrative earnings potential...." Linkage, 425 Mass. at 25. Thus, that KPCA earned more than it spent is not determinative. Even if KPCA fraudulently underreports its tuition revenue by the millions, as High Expectations alleges, that does not change the character of the revenue source: enrollment of students in degree programs that are core to KPCA's mission. See also Squeri v. Mount Ida Coll., 954 F.3d 56, 73–74 (1st Cir. 2020) (finding college's failure to disclose financial distress and engagement in untrue or misleading advertisements in violation of other

8

regulations insufficient to constitute trade or commerce because its "allegedly actionable activities involved directly encouraging students to attend [the college] so that they could receive an education").

Accordingly, the court need not consider KPCA's alternative arguments as to High Expectations' failure to state a claim under Chapter 93A. Where KPCA was not engaged in trade or commerce as required to state a claim under Chapter 93A, KPCA's motion to dismiss the Chapter 93A claim is GRANTED.

### 2. Tortious Interference with Advantageous Business Relations

"In order to make out a claim for interference with advantageous business relations, the plaintiff must prove that (1) he had a business relationship for economic benefit with a third party, (2) the defendants knew of the relationship, (3) the defendants interfered with the relationship through improper motive or means, and (4) the plaintiff's loss of advantage resulted directly from the defendants' conduct." Cavicchi v. Koski, 67 Mass. App. Ct. 654, 657, 855 N.E.2d 1137 (2006) (citation omitted). KPCA contends that the interference claim fails both the second and third elements because the Second Amended Complaint fails to allege KPCA's knowledge of the relationships at issue at the relevant time and fails to allege an improper motive or means. See KPCA Mem. ISO Mot. to Dismiss 22 [Doc. No. 54].

KPCA argues that the second element cannot be met because the only allegation that KPCA knew of High Expectations' business relationship with its students is this: "KPCA requires Plaintiff to fill out and sign a KPCA transfer form for each student; therefore, KPCA is aware that transfer students have a business relationship with the Plaintiff." Id. (quoting Second Am. Compl. ¶ 45 [Doc. No. 49]). KPCA explains that this allegation has the timing backwards, and that the allegation "indicates only that KPCA knew of High Expectations' business expectancy *after* it had already taken" the alleged wrongful actions. Id. (emphasis in original).

High Expectations responds only by pointing back to the same allegations. See Pl.'s Opp. 19 [Doc. No. 68] (citing Second Am. Compl. ¶ 45).

This sole allegation is insufficient to support a claim for tortious interference with advantageous business relations. In High Expectations' theory of the case, KPCA set lower academic and language-proficiency standards than required by law in order to attract students to enroll in its degree programs to acquire F-1 visas. If any such students were students with High Expectations at the time, KPCA interfered with the business relationship between those students and High Expectations by inducing them to transfer to KPCA. But it was <u>after</u> these wrongful actions occurred—when High Expectation filled out the students' transfer paperwork and forwarded it to KPCA—that KPCA became aware of the business relationship between the students and High Expectations. Nowhere does High Expectations allege that KPCA became aware that any prospective students were studying at High Expectations <u>prior</u> to High Expectations' completion of transfer forms. Nor does High Expectations suggest that the <u>only</u> students KPCA attracts are from High Expectations. As alleged, it is implausible that KPCA knew of any specific student's business relationship with High Expectations at the time that KPCA undertook the conduct complained of to attract such students away from High Expectations.

Accordingly, KPCA's motion to dismiss the tortious interference claim is GRANTED, and the court need not reach KPCA's other argument about failure to allege improper motive or means.

      **3.    Civil Conspiracy**

"Massachusetts recognizes two types of civil conspiracy." <u>Snyder v. Collura</u>, 812 F.3d 46, 52 (1st Cir. 2016) (citation omitted). The first is a form of vicarious liability and requires proving an underlying tort. <u>Id.</u> The second is "a very limited cause of action . . . based on the

defendants' allegedly unique ability to exert a peculiar power of coercion when acting in unison." Id. (internal quotation marks and citations omitted). "Collusive behavior among market competitors is a good example of one of those rare instances in which it is the act of agreeing that constitutes the wrong." Id. (citing Neustadt v. Emp'rs Liab. Assurance Corp., 303 Mass. 321, 21 N.E.2d 538 (1939)).

High Expectations only defends its civil conspiracy claim based on the first theory. See Pl.'s Opp. 24–25 [Doc. No. 68] ("[i]n furtherance of this agreement, KPCA and [co-defendant] GoAhead tortiously interfered with Plaintiff's advantageous business relations"). Because High Expectations has failed to state a claim for the underlying tort, the civil conspiracy claim predicated on it necessarily fails.

Accordingly, KPCA's motion to dismiss the civil conspiracy claim is GRANTED.

### IV. Conclusion

For the foregoing reasons, KPCA's Motion to Dismiss [Doc. No. 53] is GRANTED as to improper venue and failure to state a claim.

IT IS SO ORDERED.

September 4, 2025                    /s/ Indira Talwani
                                     United States District Judge